WILLIE OUTLAW, PLAINTIFF, AND APAC-ATLANTIC, INC. APPELLANT v. EDWARD LEONARD JOHNSON, JR. AND MAIL CONTRACTORS OF AMERICA, INC., DEFENDANTS

No. COA07-466

(Filed 6 May 2008)

## 1. Negligence— last clear chance—sufficiency of evidence

The trial court did not err by submitting last clear chance to the jury in a negligence action arising from the collision of a truck with the rear of a slow-moving steamroller in the lane of travel. The evidence supported reasonable inferences of all of the elements of the doctrine.

## 2. Negligence— sudden emergency—instruction refused

There was no prejudicial error in the trial court's refusal to give defendants' requested instruction on sudden emergency in a negligence action arising from the collision of a truck with a steamroller on a highway. Given the jury verdict that defendant Johnson was negligent in one or more ways, it could not be said that he was suddenly and unexpectedly confronted with imminent danger through no negligence of his own.

**3. Evidence— spoliation—instruction refused—evidence not lost or destroyed by opposing party**

The trial court did not err by denying defendants' request for a jury instruction on spoliation in a negligence action arising from the collision of a truck with the back of a steamroller on a highway where a strobe light from the steamroller was stored in a shop. Defendants did not meet the threshold requirement for an instruction that the evidence was lost or destroyed by the opposing party.

**4. Evidence— auto accident—driving record excluded—no prejudicial error**

There was no prejudicial error in a negligence action arising from a collision between a truck and a steamroller where the trial court excluded from evidence the steamroller driver's driving record. Although a part of the record was admissible, defendants did not demonstrate specific prejudice and did not allege that the jury verdict would have differed otherwise.

**5. Trials— questions following granting of motion in limine— no attorney misconduct**

The trial court did not err in a negligence action arising from the collision between a truck and a steamroller by denying defendants' motion for a mistrial for attorney misconduct. A motion in limine had been granted to exclude testimony about whether the truck driver could see the steamroller from behind the van he was following, but a witness offered a speculative answer about seeing over the van, the court sustained an objection and instructed the jury, the court then allowed a series of pointed questions about the witness's observations, and the speculative statement was not repeated.

**6. Workers' Compensation— lien—recovery from judgment— last clear chance**

The trial court did not err by finding that APAC was not entitled to recover on its workers' compensation lien from the negligence judgment awarded to its employee, plaintiff Outlaw, after the steam roller he was driving was struck from behind by a truck. Even where last clear chance was submitted and found by the jury (as here), the General Assembly intended for N.C.G.S. § 97-10.2(e) to apply.

**7. Pleadings— cross-claim—property damage—status as party required**

In a negligence action arising from the collision of a steam-roller and a truck on a highway, the construction company was not entitled to recover on its property damage claim contained in a cross-claim. APAC was not a party to the action, which is required to assert a cross-claim.

**8. Negligence— instructions—traffic manual—not applicable**

The trial court did not err by not giving APAC's requested jury instructions on the United States Department of Transportation's Manual on Uniform Traffic Control Devices in an action arising from the collision of a truck and a steamroller. The provisions of the manual cited by APAC did not provide standard safety procedures applicable to the facts of this case.

Appeal by Defendants and Appellant from order and judgment entered 27 June 2006 and order entered 22 September 2006 by Judge Kenneth F. Crow in Superior Court, Lenoir County. Heard in the Court of Appeals 26 November 2007.

*Robert D. Rouse, III for Plaintiff Willie Outlaw.*

*Womble Carlyle Sandridge & Rice, PLLC, by Clayton M. Custer, for Appellant APAC-Atlantic, Inc.*

*Cranfill Sumner & Hartzog LLP, by Robert W. Sumner, Jaye E. Bingham, and Gloria T. Becker, for Defendants.*

McGEE, Judge.

The evidence introduced at trial tended to show that on 29 March 2004, construction company APAC-Atlantic, Inc. (APAC) was involved in a road maintenance project on a bridge on Highway 70 in Lenoir County. Highway 70 in Lenoir County is a four-lane highway with two lanes of travel in both eastbound and westbound directions. Willie Outlaw (Plaintiff Outlaw) was employed by APAC as a steam-roller operator. Plaintiff Outlaw testified that after completing work at the bridge construction site, he was instructed by his supervisor to move his steamroller from the construction site to a "staging area" located at a nearby overpass. Plaintiff Outlaw then drove his steam-roller in the right-hand eastbound lane of Highway 70 towards the staging area. Plaintiff Outlaw testified that during this time he was looking forward, or eastbound, down Highway 70, and was traveling

approximately five or six miles per hour. Plaintiff Outlaw's next memory following this series of events was waking up in a hospital.

Ronald Brewington (Mr. Brewington) testified that on 29 March 2004, he was driving a van eastbound on Highway 70 in Lenoir County. As Mr. Brewington approached the bridge where APAC was undertaking its construction project, he passed a tractor-trailer truck. Mr. Brewington then merged into the left lane because the right lane of the bridge was closed off by orange cones. The orange cones tapered off approximately 200 feet after the bridge, and Mr. Brewington moved back into the right lane. Five seconds later, Mr. Brewington observed the tractor-trailer move back into the right lane. At that time, the tractor-trailer was approximately 100 to 200 feet behind Mr. Brewington's van. Mr. Brewington testified that after moving into the right lane, he looked down the highway and saw a steamroller in the road. The steamroller was "a good ways" down the highway, and Mr. Brewington "thought it was just another ordinary vehicle going down the road." Mr. Brewington took his eyes off the steamroller to check his mirrors, but when he looked ahead ten or fifteen seconds later, he was immediately behind the steamroller. Mr. Brewington swerved to the left to avoid hitting the steamroller but realized that the tractor-trailer behind him was going to hit the steamroller. Mr. Brewington observed the collision in his rearview mirror.

Edward Leonard Johnson, Jr. (Defendant Johnson) was employed as a truck driver for Mail Contractors of America (Defendant MCA) (together, Defendants). Defendant Johnson testified that on 29 March 2004, he was driving an MCA truck eastbound on Highway 70 in Lenoir County. As Defendant Johnson approached the bridge where APAC was undertaking its construction project, a van passed him and then pulled in front of his truck. When Defendant Johnson reached the bridge, he found that the right lane was closed off by orange cones, so he drove across the bridge in the left lane. The orange cones tapered off roughly 200 feet past the bridge, and both the van and Defendant Johnson moved into the right lane. Defendant Johnson testified that after moving back into the right lane, he resumed a speed of fifty or fifty-five miles per hour. Defendant Johnson never saw any more orange cones, construction workers, construction equipment, or road work. After driving a quarter of a mile, the van in front of Defendant Johnson swerved suddenly into the left lane, and Defendant Johnson observed the steamroller driven by Plaintiff Outlaw in the right lane, directly in front of him. Defendant Johnson attempted to avoid the steamroller by swerving to

the right, but he clipped the end of the steamroller and his truck went into a ditch. Both Plaintiff Outlaw and Defendant Johnson were seriously injured in the collision. As a result of his injuries, Plaintiff Outlaw received workers' compensation from APAC in the amount of $117,217.94.

Plaintiff Outlaw filed a complaint against Defendants on 22 April 2005 alleging that he was injured due to the negligence of both Defendant Johnson and Defendant MCA. Defendants filed an answer on 22 June 2005 alleging, *inter alia*, that Plaintiff Outlaw was contributorily negligent in causing the accident. In addition, Defendants claimed that APAC was negligent in allowing Plaintiff Outlaw to drive the steamroller on the highway. Defendants contended that because APAC's negligence joined and concurred with any negligence on Defendants' part, Defendants would be entitled to subtract from any judgment obtained against them the amount of any subrogation lien held by APAC pursuant to the Workers' Compensation Act. *See* N.C. Gen. Stat. § 97-10.2(e) (2007). Plaintiff Outlaw filed a reply on 8 August 2005 asserting that even had he been contributorily negligent in causing the accident, Defendant Johnson had the last clear chance to avoid the collision. Plaintiff Outlaw's reply also contained a cross-claim by APAC against Defendants for property damage to the steamroller in the amount of $53,500.00. The parties later stipulated that APAC sustained damage to its steamroller in the amount of $55,000.00.

The case was tried from 15 May to 24 May 2006 and the jury returned a verdict finding that: (1) Plaintiff Outlaw was injured by the negligence of Defendant Johnson; (2) Plaintiff Outlaw contributed to his injuries by his own negligence; (3) Defendant Johnson had the last clear chance to avoid the accident; (4) Plaintiff Outlaw was entitled to recover damages in the amount of $450,000.00; and (5) APAC was guilty of negligence that joined and concurred with Defendant Johnson's negligence.

The trial court issued an order and judgment on 27 June 2006 concluding that, based upon the jury's answer to question five finding APAC negligent, Defendants were entitled to deduct the amount of APAC's workers' compensation lien of $117,217.94 from the jury's damage award of $450,000.00. Therefore, the trial court entered judgment in favor of Plaintiff Outlaw against Defendants in the amount of $332,782.06. The trial court also concluded that based upon the jury's answer to question five, APAC was not entitled to recover on its property damage claim from Defendants. Defendants filed a motion on 7

July 2006 for judgment notwithstanding the verdict, or in the alternative, for a new trial. APAC filed a motion on 13 July 2006 asking the trial court to reconsider its rulings concerning APAC's lien and property damage claim. The trial court denied all parties' motions on 22 September 2006. Defendants and APAC appeal.

I.

Defendants raise five questions on appeal, which we consider in turn.

A.

[1] Defendants first argue that the trial court erred in submitting the issue of last clear chance to the jury. The last clear chance doctrine is a rule of proximate cause that allows a contributorily negligent plaintiff to recover where "[the] defendant's negligence in failing to avoid the accident introduces a new element into the case, which intervenes between [the] plaintiff's negligence and the injury and becomes the direct and proximate cause" of the accident. *Scott v. Darden*, 259 N.C. 167, 171, 130 S.E.2d 42, 45 (1963). To succeed on a claim of last clear chance, the contributorily negligent plaintiff must prove:

> (1) that the plaintiff negligently placed himself in a position of helpless peril; (2) that the defendant knew or, by the exercise of reasonable care, should have discovered the plaintiff's perilous position and his incapacity to escape from it; (3) that the defendant had the time and ability to avoid the injury by the exercise of reasonable care; (4) that the defendant negligently failed to use available time and means to avoid injury to the plaintiff and (5) as a result, the plaintiff was injured.

*Parker v. Willis*, 167 N.C. App. 625, 627, 606 S.E.2d 184, 186 (2004), *disc. review denied*, 359 N.C. 411, 612 S.E.2d 322 (2005). The question of last clear chance "must be submitted to the jury if the evidence, when viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential element of the doctrine." *Bowden v. Bell*, 116 N.C. App. 64, 68, 446 S.E.2d 816, 819 (1994).

The first element of last clear chance is satisfied upon a showing that a plaintiff has placed himself in a position of either helpless or inadvertent peril. A plaintiff is in a position of helpless peril when that plaintiff's "prior contributory negligence has placed her in a position from which she is powerless to extricate herself." *Williams v. Odell*, 90 N.C. App. 699, 704, 370 S.E.2d 62, 66, *disc. review denied*, 323 N.C.

370, 373 S.E.2d 557 (1988). A plaintiff is in a position of inadvertent peril where his "negligence consists of failure to pay attention to [his] surroundings and discover his own peril." *Id.* Prior automobile accident cases draw a distinction between situations in which a plaintiff negligently fails to observe an approaching vehicle, and situations in which a plaintiff observes an approaching vehicle but negligently fails to move out of the way. Where a plaintiff either turns his back to, or does not see, an approaching vehicle, he has placed himself in a position of helpless or inadvertent peril. *See, e.g., Nealy v. Green,* 139 N.C. App. 500, 534 S.E.2d 240 (2000) (holding that where the plaintiff had been walking on or near the road with his back to traffic, and he was then hit from behind by a truck, the evidence was sufficient to support a reasonable inference that the plaintiff had placed himself in a position of inadvertent peril); *Williams v. Spell,* 51 N.C. App. 134, 275 S.E.2d 282 (1981) (holding that where the plaintiff had been walking on the road with his back to traffic and was then hit from behind by a truck, there was sufficient evidence that the plaintiff had placed himself in a position of helpless peril). However, if a plaintiff observes an approaching vehicle but fails to extricate himself from the dangerous position despite having the time and ability to do so, he has not placed himself in a position of helpless or inadvertent peril. *See, e.g., Clodfelter v. Carroll,* 261 N.C. 630, 135 S.E.2d 636 (1964) (holding that where the plaintiff was walking on the side of the road facing traffic, observed the defendant's vehicle approaching in front of her, but did not sufficiently move off the road although she had time to do so, the plaintiff had not placed herself in a position of helpless or inadvertent peril); *Odell,* 90 N.C. App. 699, 370 S.E.2d 62 (holding that where the plaintiff stood on a highway entrance ramp, was nearly struck by approaching vehicles, but failed to move out of the way before being struck by the defendant's vehicle, despite having the time and ability to do so, the plaintiff had not placed herself in a position of helpless peril).

In the present case, Defendants argue that Plaintiff Outlaw was not in a position of helpless or inadvertent peril because he observed Defendant Johnson's truck approaching him on the highway. Defendants correctly note that Mr. Brewington gave a statement to police in which he claimed that while Plaintiff Outlaw was driving the steamroller, he was "looking back" in the direction of Mr. Brewington's van and Defendant Johnson's truck. Mr. Brewington also testified at trial that Plaintiff Outlaw was "looking back" over his shoulder immediately before Mr. Brewington swerved to avoid hitting the steamroller. In addition, Marvin Lee White (Mr. White), Plaintiff

Outlaw's supervisor, testified that he observed Plaintiff Outlaw drive the steamroller down the highway, and that Plaintiff Outlaw "looked back" towards the bridge "a few times." According to Defendants, this evidence demonstrates that Plaintiff Outlaw saw Defendant Johnson's truck approaching behind him but did not move out of the way before the collision, despite having the time and ability to do so. As such, Defendants argue that Plaintiff Outlaw did not place himself in a position of helpless or inadvertent peril.

We disagree with Defendants' contention. While the evidence cited above does suggest that Plaintiff Outlaw observed Defendant Johnson's truck approaching behind him, the trial transcript contains contrary evidence. Plaintiff Outlaw testified at trial that he had not looked back at the time of the collision and had never seen Mr. Brewington's van or Defendant Johnson's truck. Plaintiff Outlaw also testified that he never took any steps to avoid the vehicles because he did not see them approaching. Taken in the light most favorable to Plaintiff Outlaw, this evidence supports a reasonable inference that Plaintiff Outlaw failed to pay attention to his own surroundings, thereby placing himself in a position of inadvertent peril. Plaintiff Outlaw therefore introduced sufficient evidence on the first element of last clear chance.

The second element of last clear chance is satisfied upon a showing that "the defendant owed a duty to the plaintiff to maintain a lookout and would have discovered [the plaintiff's perilous] situation had such a lookout been maintained." *Grogan v. Miller Brewing Co.*, 72 N.C. App. 620, 623, 325 S.E.2d 9, 11, *disc. review denied*, 313 N.C. 600, 330 S.E.2d 609 (1985). Defendants admit that Defendant Johnson had a duty to maintain a proper lookout on the highway, but they argue that Defendant Johnson could not have discovered Plaintiff Outlaw's perilous situation through the exercise of reasonable care. Defendants note that Defendant Johnson testified at trial that at an earlier deposition, he had stated that he was not able to see over Mr. Brewington's van, and that the van was blocking his view of the steamroller. In addition, Mr. Brewington testified that Defendant Johnson had maintained a safe distance between his truck and Mr. Brewington's van. Defendants claim that this evidence demonstrates that even while maintaining a proper lookout, Defendant Johnson was unable to see Plaintiff Outlaw's steamroller until it was too late to avoid the collision.

We disagree with Defendants' contention. While Defendant Johnson claimed that he was unable to see the steamroller, there is

sufficient evidence in the record to support an inference that Defendant Johnson could have seen the steamroller with the exercise of reasonable care. David Mack Wood (Mr. Wood), an eyewitness to the accident, testified at trial that the windshield of Defendant Johnson's truck was higher than Mr. Brewington's van. Defendant Johnson himself testified that prior to the collision, he "probably could see over the white van," although he did not see the steamroller. Defendant Johnson and Mr. Brewington both testified that after crossing the bridge, Mr. Brewington merged back into the right lane, and for a brief period, Defendant Johnson remained in the left lane, such that his view of the road was not obstructed by the van. Defendant Johnson admitted that on a clear day, he could see "[a] pretty good ways" down the highway from his seat in the truck. Trooper David Emory (Trooper Emory) of the North Carolina Highway Patrol testified that 29 May 2004 was a "[c]lear, sunshiny, beautiful day." Taken in the light most favorable to Plaintiff Outlaw, this evidence supports a reasonable inference that Defendant Johnson failed to maintain a proper lookout and could have discovered Plaintiff Outlaw's perilous situation through the exercise of reasonable care. Plaintiff Outlaw therefore introduced sufficient evidence on the second element of last clear chance.

The third element of last clear chance is satisfied upon a showing "that [the] defendant had the time and the means to avoid the injury to the plaintiff by the exercise of reasonable care after [the defendant] discovered or should have discovered [the] plaintiff's perilous position." *Watson v. White*, 309 N.C. 498, 505-06, 308 S.E.2d 268, 273 (1983). There must have existed " 'an appreciable interval of time between the plaintiff's negligence and his injury during which the defendant, by the exercise of ordinary care, could or should have avoided the effect of [the] plaintiff's prior negligence.' " *Id.* at 506, 308 S.E.2d at 273 (quoting *Mathis v. Marlow*, 261 N.C. 636, 639, 135 S.E.2d 633, 635 (1964)).

Defendants argue that Defendant Johnson did not have the time and means to avoid the accident. Defendants note that Defendant Johnson saw the steamroller for the first time only after Mr. Brewington's van swerved into the left lane. By that time, the steamroller was directly in front of Defendant Johnson's truck, and Defendant Johnson could only swerve to the right to try to avoid the collision. Defendants argue that this happened instantaneously and therefore Defendant Johnson had neither the time nor the means to avoid the accident. *See, e.g., Casey v. Fredrickson Motor Express*

*Corp.*, 97 N.C. App. 49, 56, 387 S.E.2d 177, 181, *disc. review denied*, 326 N.C. 594, 393 S.E.2d 874 (1990) (holding that where the defendant applied his brakes and skidded before colliding with the plaintiff, but had no time or means to respond otherwise, the plaintiff's evidence was insufficient to establish element three of last clear chance); *Grogan*, 72 N.C. App. at 623-24, 325 S.E.2d at 11-12 (holding that where the defendant forklift operator immediately slammed on her brakes when the plaintiff walked in front of the forklift, the defendant had neither the time nor the means to avoid injuring the plaintiff).

We disagree with Defendants' contention. As noted in our discussion of element two above, the jury was entitled to find that Defendant Johnson should have discovered Plaintiff Outlaw's perilous situation at some point before Mr. Brewington's van swerved. Therefore, the question is not whether Defendant Johnson had the time and means to avoid the collision upon seeing the steamroller, but rather whether he had the time and means to do so after he *should* have seen the steamroller. Mr. Brewington testified that after crossing the bridge and merging into the right lane, he drove another ten or fifteen seconds before swerving to avoid the steamroller. Similarly, Defendant Johnson testified that after crossing the bridge, he traveled a quarter of a mile before colliding with the steamroller. This evidence is sufficient to raise an inference that Defendant Johnson had the time and means to avoid the accident after he should have discovered Plaintiff Outlaw's perilous situation. Plaintiff Outlaw therefore introduced sufficient evidence on the third element of last clear chance.

The fourth element of last clear chance is satisfied upon a showing that the defendant negligently failed to use the available time and means to avoid the accident. *See Parker*, 167 N.C. App. at 627, 606 S.E.2d at 186. Defendants argue that Defendant Johnson was not negligent because he only had a split second to respond after seeing the steamroller, and he did all he could to avoid the accident. We disagree. As noted in our discussion of elements two and three above, the jury was entitled to find that Defendant Johnson had approximately fifteen seconds in which to discover Plaintiff Outlaw's perilous position and avoid the collision. There is no evidence in the record to suggest that Defendant Johnson was unable to slow down or otherwise avoid the accident during that period of time. We find that Plaintiff Outlaw's evidence was sufficient to raise an inference that Defendant Johnson was negligent in failing to use the available time and means to avoid injuring Plaintiff Outlaw. Plaintiff Outlaw

therefore introduced sufficient evidence on the fourth element of last clear chance.

The fifth element of last clear chance requires a showing that the plaintiff was injured. *Parker*, 167 N.C. App. at 627, 606 S.E.2d at 186. Defendants do not dispute that this element was met. Therefore, we find that Plaintiff Outlaw introduced sufficient evidence to support all five elements of last clear chance, and we hold that the trial court did not err in submitting this issue to the jury. Defendants' assignments of error are overruled.

## B.

**[2]** Defendants next argue that the trial court erred in refusing their request for a jury instruction on the sudden emergency doctrine. Defendants requested the following pattern jury instruction, N.C.P.I. Civil 102.15:

> A person who, through no negligence of his own, is suddenly and unexpectedly confronted with imminent danger to himself or to others, whether actual or apparent, is not required to use the same judgment that would be required if there were more time to make a decision. The person's duty is to use that degree of care which a reasonable and prudent person would use under the same or similar circumstances. If, in a moment of sudden emergency, a person makes a decision that a reasonable and prudent person would make under the same or similar circumstances, he does all that the law requires, even if in hindsight some different decision would have been better or safer.

A specific jury instruction should be given when "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274, *disc. review denied*, 356 N.C. 304, 570 S.E.2d 726 (2002). Failure to give a requested and appropriate jury instruction is reversible error if the requesting party is prejudiced as a result of the omission. *See Carrington v. Emory*, 179 N.C. App. 827, 832, 635 S.E.2d 532, 535 (2006).

Even assuming *arguendo* that the trial court erred by failing to give Defendants' requested jury instruction, we find that any such error was harmless error in light of the jury verdict. The first question posed to the jury asked, "[w]as [Plaintiff Outlaw] injured by the neg-

ligence of [Defendant Johnson]?" The trial court instructed the jury that to answer this question in the affirmative, the jury would need to find that Defendant Johnson was negligent in one or more of the following ways: (a) he failed to keep a reasonable lookout; (b) he failed to keep his truck under proper control; (c) he drove at a dangerous speed; (d) he failed to reduce his speed to avoid an accident; or (e) he followed the van in front of him too closely. The jury answered the question in the affirmative, meaning it found that Defendant committed one or more of these negligent acts or omissions. Further, each of these acts or omissions would have occurred before Defendant Johnson experienced the "sudden emergency" that began when Mr. Brewington's van swerved and Defendant Johnson first saw the steamroller. Therefore, it cannot be said that Defendant Johnson, *"through no negligence of his own,* [was] suddenly and unexpectedly confronted with imminent danger." N.C.P.I. Civil 102.15 (emphasis added).

We find that even if the trial court had instructed the jury on the sudden emergency doctrine, Defendants could not have benefitted from that instruction given the jury's answer to question one. Therefore, Defendants were not prejudiced by the trial court's refusal to issue the requested jury instruction. Defendants' assignments of error are overruled.

C.

**[3]** Defendants next argue that the trial court erred in refusing their request for a jury instruction on spoliation. The spoliation doctrine recognizes that where a party fails to produce certain evidence relevant to the litigation, the finder of fact may infer that the party destroyed the evidence because the evidence was harmful to its case. *See Arndt v. First Union Nat'l Bank,* 170 N.C. App. 518, 527, 613 S.E.2d 274, 281 (2005). The party requesting a spoliation instruction must demonstrate that the opposing party had notice of the potential for future litigation, and that the lost evidence was relevant and potentially supportive of the requesting party's claim. *Id.* at 527-28, 613 S.E.2d at 281.

The record reflects that at the time of the collision, a strobe light was attached by a magnet to the top of the steamroller. Following the collision, APAC employees removed the strobe light and stored it in a workshop. After Plaintiff Outlaw filed the current lawsuit, defense counsel made arrangements for Defendants' expert witnesses to inspect the steamroller involved in the collision. At the inspection,

defense counsel and Defendants' expert witnesses did not inspect the strobe light because it was no longer attached to the steamroller. Shortly before trial, Defendants learned that the strobe light was available for inspection, and APAC's counsel informed Defendants that Plaintiff Outlaw and APAC planned to introduce the strobe light into evidence at trial. Defendants allege that as a result of these events, they were entitled to a jury instruction on spoliation. Specifically, Defendants contend that APAC was aware of the pending lawsuit at the time it removed the strobe light; that the strobe light was relevant to an important issue in the lawsuit, namely, whether the strobe light was functioning properly at the time of the collision; and that Defendants were prejudiced because they were unable to inspect the strobe light prior to trial.

We find that the trial court did not err in refusing to give Defendants' requested spoliation instruction because such an instruction was not supported by the evidence. *See Liborio*, 150 N.C. App. at 534, 564 S.E.2d at 274. The record demonstrates that approximately one month before trial, one of Defendants' expert witnesses, Mr. Bayer, requested that he be allowed to inspect the strobe light. APAC's counsel then faxed a letter to Defendants' counsel attempting to arrange an inspection, but Defendants' counsel never received the fax. At a pretrial hearing, the trial court attempted to resolve the situation by ordering APAC's counsel to ship the strobe light overnight to Defendants' expert witness for inspection. Defendants did not call Mr. Bayer to testify at trial, and the strobe light was available in the courtroom at trial.

Based on this record, it appears that APAC did not lose or destroy the strobe light and, after its availability became an issue, made the strobe light available to Defendants. Therefore, Defendants have not met the threshold requirement for an instruction on spoliation, namely, that the relevant evidence was lost or destroyed by the opposing party. An instruction on spoliation was not warranted simply because Defendants would have preferred to inspect the strobe light at the same time they inspected the steamroller. Defendants' assignments of error are overruled.

D.

[4] Defendants next argue that the trial court erred in excluding Plaintiff Outlaw's driving record from evidence. Before trial, Plaintiff Outlaw made a motion *in limine* to exclude evidence of his driving record, which contained three convictions between 1998 and 2001 for

driving either without a license or with a revoked license, and five DWI convictions between 1969 and 1986. Defendants argued that Plaintiff Outlaw's driving record was admissible to impeach Plaintiff Outlaw's credibility as a witness. The trial court excluded this evidence under N.C. Gen. Stat. § 8C-1, Rule 403, finding that "any such record would clearly be more prejudicial than probative[.]" Defendants argue that the trial court erred in excluding this evidence.

N.C. Gen. Stat. § 8C-1, Rule 609 (2007) provides as follows:

(a) *General rule.*—For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted[.]

(b) *Time limit.*—Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the conviction . . . substantially outweighs its prejudicial effect.

Plaintiff Outlaw's five DWI convictions were all at least twenty years old and were therefore properly excluded under Rule 609(b). Plaintiff Outlaw's convictions for driving without a license and driving with a revoked license were less than ten years old and are Class 2 misdemeanors, *see* N.C. Gen. Stat. § 20-35(a) (2007), and were therefore admissible under Rule 609(a). The trial court, however, found that despite the admissibility of these convictions under Rule 609(a), they should nonetheless be excluded under Rule 403 because their probative value on the issue of Plaintiff Outlaw's credibility was outweighed by their likely prejudicial effect. Defendants argue the trial court erred in making this determination.

In *State v. Brown*, 357 N.C. 382, 584 S.E.2d 278 (2003), *cert. denied*, 540 U.S. 1194, 158 L. Ed. 2d 106 (2004), the defendant asked our Supreme Court to apply the Rule 403 balancing test to a conviction otherwise admissible under Rule 609(a). The Supreme Court declined, stating:

Defendant's argument fails to take into account the clearly expressed intent of the legislature. The language of Rule 609(a) ("shall be admitted") is mandatory, leaving no room for the trial court's discretion. Moreover, while [Rule] 609(b) requires a balancing test of the probative value and prejudicial effect of a conviction more than ten years old, this provision is explicitly absent

from [Rule] 609(a). Indeed, the official comments to Rule 609(a) reveal an unequivocal intention to diverge from the federal requirement of a balancing test.

*Id.* at 390, 584 S.E.2d at 283. Our Court apparently overlooked *Brown* in reaching a contrary result in *Headley v. Williams,* 162 N.C. App. 300, 307, 590 S.E.2d 443, 447, *disc. review denied,* 358 N.C. 375, 598 S.E.2d 136 (2004) (finding no abuse of discretion where the trial court excluded on Rule 403 grounds evidence that was otherwise admissible under Rule 609(a)). While we are ordinarily bound by prior decisions of our Court, our Supreme Court's holding in *Brown* clearly controls our decision in the present case. Therefore, because Plaintiff Outlaw's convictions were admissible under Rule 609(a), and because the trial court had no discretion to exclude such evidence under Rule 403, we hold that the trial court erred in granting Plaintiff Outlaw's motion *in limine.*

When considering evidentiary errors on appeal, however, "[t]he burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred." *Suarez v. Wotring,* 155 N.C. App. 20, 30, 573 S.E.2d 746, 752 (2002), *disc. review denied and cert. denied,* 357 N.C. 66, 579 S.E.2d 107 (2003). Defendants merely assert in their brief that the evidence at issue "was offered to impeach [P]laintiff Outlaw's credibility as a witness on cross-examination," and that Defendants "were prejudiced . . . to the extent the evidence related to impeaching [P]laintiff Outlaw's credibility on cross-examination and a new trial was warranted." Defendants have not demonstrated how they were specifically prejudiced by the trial court's error, nor do they allege that the jury verdict would have been different had Plaintiff Outlaw's prior convictions been admitted. Therefore, we find that the trial court's error was harmless error. Defendants' assignments of error are overruled.[1]

E.

[5] Finally, Defendants argue that the trial court erred by denying Defendants' motion for a mistrial due to attorney misconduct. Before

---

1. Defendants also argue that Plaintiff Outlaw's driving record was admissible because it was relevant on the issue of whether APAC was negligent in hiring Plaintiff Outlaw to drive a steamroller, and because APAC "opened the door" to such testimony at trial. Defendants correctly note, however, that because they prevailed on the issue of APAC's negligence at trial, this issue is moot unless we grant APAC a new trial. Because we do not grant APAC a new trial, *see infra,* we do not reach Defendants' additional arguments.

trial, Defendants made a motion *in limine* to exclude Plaintiff Outlaw's and APAC's witnesses from testifying about whether Defendant Johnson was able to see the steamroller while traveling behind Mr. Brewington's van. Counsel for Plaintiff Outlaw and for APAC admitted that it would be improper to ask a witness to speculate about what Defendant Johnson was able to see, but "believe[d] the witnesses [could] talk about what they saw and what their observations were and then the jury [could] draw inferences from that." The trial court agreed and granted Defendants' motion.

During Plaintiff Outlaw's direct examination of Mr. Wood at trial, the following exchange occurred:

PLAINTIFF OUTLAW'S COUNSEL: Now, when you observed the three vehicles in a line, did you ascertain the height of the windshield of the tractor-trailer truck in relationship to the height of the van?

DEFENSE COUNSEL: Objection.

THE COURT: Overruled. Could you do that?

MR. WOOD: Yes, you could. [Defendant Johnson] could see over the van.

DEFENSE COUNSEL: Objection.

THE COURT: Sustained. Ladies and gentlemen, you disregard that.

Defendants moved for a mistrial, and the trial court denied the motion. Defendants argue that counsel for Plaintiff Outlaw intentionally elicited this prohibited testimony, that Defendants were prejudiced thereby, and that Defendants were entitled to a new trial.

Under N.C. Gen. Stat. § 15A-1061 (2007), a trial court must declare a mistrial upon an appropriate motion "if there occurs during the trial an error or legal defect in the proceedings . . . resulting in substantial and irreparable prejudice to the defendant's case." We review a trial court's denial of a motion for a mistrial for abuse of discretion. *State v. Strickland*, 153 N.C. App. 581, 591, 570 S.E.2d 898, 905 (2002).

We note that Plaintiff Outlaw's counsel's question to Mr. Wood merely called for a "yes" or "no" answer, and did not call for Mr. Wood to speculate as to whether Defendant Johnson could see over the van. After Defendants' objection to Mr. Wood's improper response was

sustained, the trial court instructed Mr. Wood to "confine your answer just to the question that's being asked of you[.]" Mr. Wood agreed to do so. Plaintiff Outlaw's counsel, with the guidance of the trial court, then asked a series of pointed questions to Mr. Wood designed to elicit his observation that the windshield of Defendant Johnson's truck was higher than Mr. Brewington's van. Mr. Wood did not repeat his prior speculative statement. At the conclusion of Mr. Wood's testimony, the trial court issued a lengthy instruction asking the jurors to disregard Mr. Wood's speculative statement.

Based on this record, we find that the trial court did not abuse its discretion in denying Defendants' motion for a mistrial. The trial court specifically found that Mr. Wood "was just trying to offer what he thought was logical testimony," and that Plaintiff Outlaw's counsel had not intended to elicit Mr. Wood's improper response. Further, the trial court gave a curative instruction to the jury immediately after Mr. Wood's statement and it gave an additional curative instruction at the close of Mr. Wood's testimony. Under these circumstances, we cannot say Defendants suffered "substantial and irreparable prejudice" as a result of Mr. Wood's statement. Defendants' assignments of error are overruled.

In sum, we find that the trial court did not err in: submitting the issue of last clear chance to the jury; refusing Defendants' request for a jury instruction on spoliation; or denying Defendants' motion for a mistrial. We also find that the trial court did not commit prejudicial error in refusing Defendants' request for a jury instruction on sudden emergency, or in excluding Plaintiff Outlaw's driving record from evidence.

II.

APAC raises three questions on appeal. We consider each of APAC's arguments in turn.

A.

[6] APAC first argues that the trial court erred by concluding that pursuant to N.C.G.S. § 97-10.2(e), APAC was not entitled to recover on its workers' compensation lien from the judgment awarded to Plaintiff Outlaw. N.C.G.S. § 97-10.2(e) represents a codification of our Supreme Court's holding in *Brown v. R.R.*, 204 N.C. 668, 169 S.E. 419 (1933). In *Brown*, the Court held that "where an employer seeks to recover from a third-party tortfeasor the amount of workers' compensation benefits paid by the employer to its employee, the third

party may raise the employer's contributory negligence in causing the employee's injury as a defense to the employer's action." *Estate of Harvey v. Kore-Kut, Inc.*, 180 N.C. App. 195, 200, 636 S.E.2d 210, 213 (2006) (summarizing our Supreme Court's holding in *Brown*). *See Brown*, 204 N.C. at 671, 169 S.E. at 420.

In accord with the holding in *Brown*, N.C.G.S. § 97-10.2(e) provides that in a suit by an injured employee or his employer against a negligent third party:

> If the third party defending such proceeding . . . sufficiently alleges that actionable negligence of the employer joined and concurred with the negligence of the third party in producing the injury or death, then an issue shall be submitted to the jury in such case as to whether actionable negligence of [the] employer joined and concurred with the negligence of the third party in producing the injury or death. The employer shall have the right to appear, to be represented, to introduce evidence, to cross-examine adverse witnesses, and to argue to the jury as to this issue as fully as though he were a party although not named or joined as a party to the proceeding. Such issue shall be the last of the issues submitted to the jury. If the verdict shall be that actionable negligence of the employer did join and concur with that of the third party in producing the injury or death, then the court shall reduce the damages awarded by the jury against the third party by the amount which the employer would otherwise be entitled to receive therefrom by way of subrogation[.]

By its plain language, N.C.G.S. § 97-10.2(e) raises a complete bar to an employer's ability to recover on its workers' compensation lien if the employer's own negligence was a joint cause of the employee's injury. However, the statute does not explicitly address situations where, despite the employer's negligence, a jury finds that the defendant had the last clear chance to avoid injuring the plaintiff, meaning that the defendant's negligence was the proximate cause of the plaintiff's injury. APAC argues that traditional tort doctrines apply unless specifically abrogated by statute, and thus the doctrine of last clear chance should be superimposed on N.C.G.S. § 97-10.2(e). Therefore, according to APAC, just as a contributorily negligent plaintiff may recover when the defendant had the last clear chance to avoid the injury, so too may a negligent employer recover on its workers' compensation lien upon a jury finding of last clear chance, despite the language of N.C.G.S. § 97-10.2(e).

APAC's question appears to be one of first impression in North Carolina. Upon considering prior case law interpreting N.C.G.S. § 97-10.2(e) and the plain language of the statute, we hold that APAC's arguments are without merit.

Our Court has previously noted that N.C.G.S. § 97-10.2(e) "evidences a strong public policy in North Carolina of prohibiting a negligent employer from recouping any workers' compensation benefits paid to an injured employee. It is not the purpose of the Workers' Compensation Act to exculpate or absolve employers from the consequences of their negligent conduct." *Jackson v. Howell's Motor Freight, Inc.*, 126 N.C. App. 476, 480, 485 S.E.2d 895, 899, *disc. review denied*, 347 N.C. 267, 493 S.E.2d 456 (1997) (quoting *Geiger v. Guilford Coll. Comm. Volunteer Firemen's*, 668 F. Supp. 492, 497 (M.D.N.C. 1987)). *See also Johnson v. Southern Industrial Constructors*, 347 N.C. 530, 538, 495 S.E.2d 356, 360-61 (1998) (stating that "[i]t is clear from the provisions of N.C.G.S. § 97-10.2 . . . and the cases which have construed it, that it was and is the intent of the legislature that *non-negligent* employers are to be reimbursed for those amounts they pay to employees who are injured by the negligence of third parties" (emphasis added)).

Further, the plain language of N.C.G.S. § 97-10.2(e) precludes a negligent employer from recovering on its lien without regard to the last clear chance doctrine. "[W]hen confronted with a clear and unambiguous statute, courts 'are without power to interpolate, or superimpose, provisions and limitations not contained therein.' " *In re R.L.C.*, 361 N.C. 287, 292, 643 S.E.2d 920, 923, *cert. denied*, —— U.S. ——, 169 L. Ed. 2d 396 (2007) (quoting *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978)). We also note that under N.C.G.S. § 97-10.2(e), when a defendant alleges negligence on the part of the employer, the trial court *shall* submit the issue of the employer's negligence to the jury, and this *shall* be the *last* question considered by the jury. In accordance with this mandatory language, we find that the General Assembly intended for N.C.G.S. § 97-10.2(e) to apply even in cases where the issue of last clear chance has been submitted to the jury, and the jury has answered this question in the affirmative.

If last clear chance principles are to be superimposed on N.C.G.S. § 97-10.2(e), it is our General Assembly, and not our courts, that must make this policy determination. The trial court therefore did not err in finding that APAC was not entitled to recover on its workers' compensation lien. APAC's assignments of error are overruled.

B.

[7] APAC next argues that the trial court erred by concluding that APAC was not entitled to recover on its $55,000.00 property damage claim. APAC correctly notes that our prior cases demonstrate that property damages, like personal injury damages, are recoverable under the last clear chance doctrine. *See, e.g., Page v. Boyles,* 139 N.C. App. 809, 535 S.E.2d 561 (2000), *aff'd per curiam,* 353 N.C. 361, 543 S.E.2d 480 (2001) (reinstating a jury award of personal and property damages in favor of the plaintiff, in a case where the defendant had the last clear chance to avoid the accident); *Wray v. Hughes,* 44 N.C. App. 678, 262 S.E.2d 307, *disc. review denied,* 300 N.C. 203, 269 S.E.2d 628 (1980) (holding that the question of last clear chance should have been submitted to the jury in a case where the plaintiff sought both property and personal injury damages). APAC contends that although the jury found that APAC was negligent in contributing to Plaintiff Outlaw's injury, APAC's negligence, like Plaintiff Outlaw's negligence, was "trumped" by the jury's finding on the issue of last clear chance, thus allowing APAC to recover on its property damage claim. We do not address APAC's arguments because we find that APAC was not procedurally able to seek an award of property damages in the current action.

The present action commenced when Plaintiff Outlaw filed a complaint against Defendant Johnson and Defendant MCA. APAC was not a party to this action. Defendants then filed an answer and counterclaim in which they alleged, pursuant to N.C.G.S. § 97-10.2(e), that APAC's negligence joined and concurred with that of Defendants, and therefore APAC was not entitled to recover on its workers' compensation lien. As a result of Defendants' allegation, APAC had "the right to appear, to be represented, to introduce evidence, to cross-examine adverse witnesses, and to argue to the jury as to this issue as fully *as though [it] were a party although not named or joined as a party to the proceeding."* N.C.G.S. § 97-10.2(e) (emphasis added). Plaintiff Outlaw filed a reply to Defendants' answer and counterclaim. This reply included a "CROSS-CLAIM OF ADDITIONAL PARTY APAC-ATLANTIC, INC.," in which "APAC, as an additional party to this action, pursuant to N.C. Gen. Stat. § 97-10.2," sought $53,500.00 in property damage to its steamroller.

N.C. Gen. Stat. § 1A-1, Rule 13(g) (2007) provides:

*Crossclaim against coparty.*—A pleading may state as a crossclaim any claim by one *party* against a *coparty* arising out of the

transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action (emphasis added).

Under Rule 13(g), in order for a person or entity to assert a crossclaim in a pleading, that person or entity must be a party to the action. Despite the statement to the contrary in Plaintiff Outlaw's reply, it is clear that under N.C.G.S. § 97-10.2(e), APAC was not a party to the lawsuit at issue. *See, e.g., Leonard v. Johns-Manville Sales Corp.*, 309 N.C. 91, 102, 305 S.E.2d 528, 535 (1983) (noting that while an employer may defend an allegation of negligence under N.C.G.S. § 97-10.2(e), the employer "shall not be made a party"). While N.C.G.S. § 97-10.2(e) did grant APAC certain rights with respect to the litigation, the right to file a crossclaim was not included within these rights. Since APAC was not a party to the proceeding and was not made a party to the proceeding under any other statute or rule of civil procedure, it was unable to assert a crossclaim under Rule 13(g).[2] Therefore, the trial court did not err by finding that APAC was not entitled to recover on its property damage claim. APAC's assignments of error are overruled.

C.

[8] Finally, APAC argues that the trial court erred by refusing to instruct the jury on certain topics contained in the United States Department of Transportation's Manual on Uniform Traffic Control Devices (MUTCD). The MUTCD, which "contains standards for the design and deployment of traffic control devices," has been incorporated into the North Carolina Administrative Code. *See* 19A N.C.A.C. 2B.0208 (2007). APAC requested that the trial court instruct the jury as to three aspects of the MUTCD, including: (1) the MUTCD requires the use of "flaggers" when a lane is closed on a two-lane highway, but it does not require the use of flaggers when a lane is closed on a four-lane highway, *see* M.U.T.C.D. Figure 6H-10; (2) the MUTCD allows, but it does not require, the use of "shadow vehicles" to protect highway workers on mobile construction devices, *see* M.U.T.C.D. § 6D.03; and (3) the MUTCD contains typical applications of temporary traffic control devices, but recognizes that control devices may differ from those described to compensate for the conditions and requirements

---

2. Our holding on this issue does not suggest that APAC was wholly unable to assert a claim against Defendants for property damage to the steamroller; we hold only that the procedural mechanism APAC used to assert its claim in this case was improper.

of a particular work site, and gives supervising officials the responsibility and discretion to select an appropriate traffic control plan, *see* M.U.T.C.D. § 6A.01. The trial court denied APAC's request because the MUTCD had not been received into evidence.

APAC argues that these MUTCD provisions were essential to the jury's determination of whether APAC's safety controls were reasonable. Without these instructions, APAC contends, the jury was allowed to create its own standard to determine whether APAC's precautions were reasonable. We disagree with APAC's contentions. Had APAC closed a lane on a *two-lane* road, or had the MUTCD *required* the use of shadow vehicles in these circumstances, the requested jury instructions might have been relevant in terms of defining the reasonable safety precaution to use in such situations. However, the MUTCD provisions cited by APAC do not provide similar guidance applicable to the facts of this case. Pursuant to M.U.T.C.D. Figure 6H-10, APAC was not required to use flaggers to close a lane on a four-lane highway. Therefore, APAC's decision whether or not to use flaggers was discretionary. Similarly, pursuant to M.U.T.C.D. § 6D.03, APAC was not required to use a shadow vehicle but had the discretion to do so. Finally, M.U.T.C.D. § 6A.01 provided that these decisions, as well as APAC's other safety decisions not expressly controlled by MUTCD provisions,[3] were discretionary given the specific circumstances at the work site.

Because the MUTCD provisions cited by APAC did not provide traffic control guidance in these specific areas, the proper question for the jury was whether APAC was negligent in making certain discretionary safety decisions. In its charge to the jury, the trial court correctly instructed the jury as follows:

> With respect to [Defendants'] contentions of . . . APAC's negligence, a construction company such as . . . APAC has a duty to conduct its operations while exercising ordinary care to protect

3. Mr. White, Plaintiff Outlaw's supervisor, testified and was subject to cross-examination at trial regarding a number of his safety decisions relevant to the question of APAC's negligence, including: the proper method of setting up a work zone and blocking off a lane with traffic cones; whether the warning lights on the steamroller were sufficient; Mr. White's decision to end the right-lane closure shortly after the bridge, rather than extending the traffic cones all the way to the staging area; his decision not to use a flat-bed truck to transport the steamroller to the staging area, although such a truck was available and use of the truck for that purpose was common; his decision to tell Plaintiff Outlaw to drive the steamroller in the highway, rather than off the side of the highway; and his decision to forego the use of flaggers or a shadow vehicle.

its employees and others from injury. Ordinary care means that degree of care that a reasonable and prudent company would use under the same or similar circumstances to protect its employees and others from injury. A company's failure to exercise ordinary care in its operations is negligence.

The jury was properly able to assess the reasonableness of APAC's safety decisions pursuant to the charge given by the trial court. It was not necessary for the jury to be instructed as to reasonableness standards set forth in the MUTCD because the MUTCD provisions cited by APAC did not provide standard safety procedures applicable to the facts of this case. We therefore find that the trial court did not err in failing to give APAC's requested jury instructions because such instructions were not supported by the evidence. *See Liborio*, 150 N.C. App. at 534, 564 S.E.2d at 274. APAC's assignments of error are overruled.

In sum, we find that the trial court did not err in: concluding that APAC was not entitled to recover on its workers' compensation lien; concluding that APAC was not entitled to recover on its property damage claim; or refusing to instruct the jury on certain topics contained in the MUTCD.

In Defendants' appeal we find no prejudicial error.

In APAC's appeal we find no error.

Chief Judge MARTIN and Judge STEPHENS concur.