GROVER FRANKLIN MINOR AND CAROLEEN W. MINOR, PLAINTIFFS
v.
SANDRA ANN MINOR, DEFENDANT

No. COA12-693

Filed 18 December 2012

**Adverse Possession—jury instruction—harmless error—insufficient evidence as to hostility and duration**

The trial court did not err in a real property case by denying defendant's request for an instruction on acquiring title to less than the entire tract. Any error in failing to so instruct the jury was harmless in light of the insufficiency of the evidence as to the hostility and duration of defendant's possession.

Judge Elmore dissenting.

Appeal by Defendant from judgment entered 30 August 2011 and order entered 23 September 2011 by Judge Jan H. Samet in Guilford County District Court. Heard in the Court of Appeals 14 November 2012.

*Forman Rossabi Black, P.A., by T. Keith Black and Gavin J. Reardon, for Plaintiffs-Appellees.*

*Tuggle Duggins & Meschan, P.A., by Denis E. Jacobson and Jeffrey S. Southerland, for Defendant-Appellant.*

BEASLEY, Judge.

Sandra Ann Minor (Defendant) appeals from judgment entered pursuant to a jury verdict declaring Grover and Caroleen Minor (collectively, Plaintiffs) to be the lawful owners of the property located at

**MINOR v. MINOR**

[224 N.C. App. 471 (2012)]

7949 Valley Falls Road (the property). Defendant also appeals from an order denying her motions for judgment notwithstanding the verdict and a new trial. For the reasons stated below, we affirm.

Defendant is Plaintiffs' ex-daughter-in-law. Grover Minor (Grover) and his father bought the property as part of a larger tract of land in 1971. They subdivided the land in 1972, making Plaintiffs the record owners of the disputed property. Grover and his son, Tyson Minor (Tyson), built a log cabin on the land in mid-1970s. Tyson and Defendant married in 1980. Ty and Defendant began living in the cabin between 1984 and 1986. Defendant testified that she thought the cabin was her husband's property. Defendant believed she owned the land based on what Grover had said to her about inheriting the property if Tyson died. She did not ask permission to live there or make improvements. Around Christmas of 1985, she testified to telling the family that the property was hers and Tyson's property. On cross-examination when she was asked whether she lived at the cabin with her husband's permission, she answered that they lived together and she let him live there too. She claimed to be the owner of the property, having assumed her name was on the deed.

Grover testified that he gave Tyson permission to live in the cabin. Grover stated that Defendant had permission to live there since she was Tyson's wife. Grover pledged the property as collateral on a deed of trust for a loan so that Tyson and Defendant could make improvements to the property. Tyson and Defendant made the payments on the loan, but Grover signed the promissory note.

Tyson paid a leasehold tax in exchange for living on the property, and Plaintiffs paid the real estate taxes, according to Grover's and Tyson's testimonies. Plaintiffs' exhibit[1] shows that leasehold taxes, rather than real property taxes, were paid on the property from 1985 to 2006. The exhibit also includes a 1988 check for the amount due signed by Defendant. Defendant admitted that she wrote the check. She thought she was paying the taxes she and Tyson owed on the property.

There was never a doubt in Tyson's mind that his father owned the property. Tyson never heard Defendant say she owned the property. Tyson testified that Defendant did not like Caroleen Minor making statements in public that Defendant and Tyson lived on her and Grover's property because it made it seem like they did not own it.

1. The exhibit is denominated "Trial Exhibit 'D-1' " since Plaintiffs took the posture of the defendants in the case below.

MINOR v. MINOR

[224 N.C. App. 471 (2012)]

Tyson told Grover about several of the improvements they were going to make on the property. He did not explicitly ask for permission, but he would let Grover know their plans and Grover did not stop them. He took it as permission to make the improvements. If Grover had said no, he would not have been able to make those improvements.

Defendant and Tyson lived together on the property continuously from 1984 until they separated around 2001. At that time, Tyson moved off of the property. After the separation, Grover testified that he allowed Defendant to continue living there since she was still legally their daughter-in-law and asked her to leave in 2008 when she and Tyson began the divorce process.

Plaintiffs filed a complaint in Guilford County District Court on 27 January 2010. Plaintiffs obtained a judgment for summary eject-ment in small claims court on 16 March 2010. Defendant appealed to district court on 25 March 2010 and filed a counterclaim to quiet title by way of adverse possession on 23 April 2010. The issue of adverse possession came on for jury trial on 18 July 2011. Defendant took the posture of the plaintiff during trial.

Defendant requested an instruction that Defendant could ac-quire title to less than the entire tract of land. The trial court denied the request.

On 20 July 2011, the jury returned a verdict in favor of Plaintiffs, finding that Defendant's possession of the property was not actual, open and notorious under known and visible boundaries, and unin-terrupted for twenty years. The jury found that Defendant's posses-sion of the property was exclusive and hostile to Plaintiffs, but the verdict sheet does not indicate when this exclusive and hostile possession began.[2] Defendant filed motions for judgment notwith-

---

2. The dissent argues that our review exceeds the issues presented since the jury found that Defendant's possession was hostile. As noted above, we cannot tell during what time period the jury found her possession to be hostile. Her possession was cer-tainly hostile after 2008 when Grover asked her to leave. Regardless of whether the jury found Defendant's possession to be hostile earlier than 2008, the jury nevertheless found against Defendant on the statutory period, supporting our ultimate conclusion that Defendant has failed to show that the jury was misled or that the verdict was affected. It is unnecessary to reverse and remand the case for a new trial when the evi-dence shows that the verdict in the first trial should nonetheless be upheld.

In further response to the dissent, the other improvements built in the 1980s and shown on "Exhibit E" fail to create visible boundaries that satisfy the twenty-year period. The dog fence that would enclose the portion Defendant claims was not con-structed until 1994, meaning the statute of limitations would not run until 2014. The

standing the verdict and a new trial on 29 July 2011, both of which were denied 23 September 2011. Defendant now appeals.

Defendant argues that the trial court erred in denying her request for an instruction on acquiring title to less than the entire tract. We disagree. Defendant has failed to show that the jury was misled or that the verdict was affected by the trial court's failure to give the instruction. Any error in failing to so instruct the jury is harmless in light of the insufficiency of the evidence as to the hostility and duration of Defendant's possession.

> A specific jury instruction should be given when "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury."

*Outlaw v. Johnson,* 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008) (quoting *Liborio v. King,* 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002)). "The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction." *Bass v. Johnson,* 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002).

"In North Carolina, to acquire title to land by adverse possession, the claimant must 'show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period . . . under known and visible lines and boundaries.' " *Rushing v. Aldridge,* ___ N.C. App. ___, ___, 713 S.E.2d 566, 571 (2011)(quoting *Merrick v. Peterson,* 143 N.C. App. 656, 663, 548 S.E.2d 171, 176 (2001)). The evidence in this case demonstrates that Plaintiff's possession was permissive and failed to satisfy the prescriptive period.

"A 'hostile' use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right." *Dulin v. Faires,* 266 N.C. 257, 261, 145 S.E.2d 873, 875 (1966). North Carolina presumes permissive use, and the presumption is stronger when the parties are related. *Amos*

---

barbed wire fence that was installed in 1984 merely traces along the property line and fails to separate the portion that Defendant claims from the remainder of the tract. As such, Defendant's requested jury instruction would not have affected the verdict since she failed to show visible boundaries as to a lesser portion of the property for a twenty-year period.

*v. Bateman,* 68 N.C. App. 46, 50, 314 S.E.2d 129, 131 (1984)("Mere use, standing alone, is presumed to be permissive, particularly use by members of a family living as neighbors as in this case." (internal citation omitted)). In cases of adverse possession by a tenant as against the landlord, the lease must end before the use becomes adverse to the landlord. *See Pitman v. Hunt,* 197 N.C. 574, 576, 150 S.E. 13, 14 (1929). The statutory period to acquire title by adverse possession without color of title is twenty years. N.C. Gen. Stat. § 1-40 (2011).

A New York case speaks to the unique facts presented here. The New York Appellate Division, in considering whether the occupant of a co-operative apartment was likely to prevail on the merits of her adverse possession claim such that the court should issue an injunction, held as follows:

> While plaintiff and Malone, whose spouses were siblings, may not be related to each other in any conventional sense, any presumption of hostility to which plaintiff is entitled by reason of the fact that her occupancy was open, continuous and uninterrupted for at least 10 years is rebutted by the fact that she was the prior owner's daughter-in-law, and that her occupancy of the apartment from 1984 to 1995 [the time period corresponding to her marriage] was apparently with his permission. Moreover, even if such an in-law relationship is not by itself sufficient to rebut the presumption of hostility, taking possession of property by reason of cohabiting with a spouse is not a taking under a claim of right, also a necessary element of adverse possession. It does not avail plaintiff that she may have believed that her husband owned the apartment.

*Sugarman v. Malone,* 816 N.Y.S.2d 453, 454 (N.Y. App. Div. 2006) (internal citations omitted).[3]

Here, Defendant's possession is presumed permissive, and she failed to rebut that presumption and demonstrate that her possession was hostile for twenty years. Defendant lived on the property with Plaintiffs' permission and merely paid a leasehold interest on the property. Defendant's lease on the property and permissive use ended only in 2008 when Plaintiffs sued for summary ejectment; thus, any

---

3. New York law differs from North Carolina law in that New York presumes hostile use if all other elements of adverse possession have been met. *Sinicropi v. Town of Indian Lake,* 538 N.Y.S.2d 380, 381 (N.Y. App. Div. 1989).

hostile use of the property began only in 2008, well short of the statutory period of twenty years. Further, Tyson gave unequivocal testimony that he never thought he owned the property. "Cohabiting with a spouse is not a taking under a claim of right," as noted by the *Sugarman* court. *Id.* Her right to be on the property was derivative of Tyson's; she could have no more right to the cabin by adverse possession than he did. If Defendant and Tyson had not divorced, Defendant could not sue to quiet title as against Plaintiffs where Tyson did not have the state of mind to claim the property as his own. Defendant has failed to demonstrate to this Court that the verdict was affected or that the jury was misled when the evidence tends to show that she did not possess the property under a claim of right for twenty years.

In Defendant's "Issues Presented," she lists the issue of whether the trial court erred in denying her motion for judgment notwithstanding the verdict. Given our decision above, we need not consider it.[4]

For the reasons stated above, we affirm the trial court's decisions and the jury's verdict.

Affirmed.

Judge STROUD concurs in result only.

Judge ELMORE dissents.

ELMORE, Judge dissenting.

I respectfully disagree with the decision of the majority to affirm the trial court's judgment entered in Guilford County District Court on 30 August 2011, declaring that defendant had no lawful interest in the property subject to this dispute and dismissing her appeal of summary ejectment. I agree with defendant that the trial court erred in failing to instruct the jury that they could divide the property at issue in the event that they determined defendant adversely possessed some lesser portion of the property. As a result, I would we reverse and remand for a new trial.

I believe that the majority's analysis stretches far beyond what we have been asked to review on appeal. On appeal, defendant contends

---

4. We would also deem the issue abandoned per N.C. R. App. P. 28(a) since Defendant presented no argument on this issue, instead choosing to argue for a new trial throughout her brief.

only that the trial court erred in failing to instruct the jury that they could divide the property 1) in its initial instruction to the jury and 2) after the jury sent a written question to the trial court, inquiring if it could divide the property. Defendant submitted a written request for specific instructions "for the purpose of allowing the jury to determine if she possessed something less than the entire 23-acre parcel in the event that that portion of the property was actually possessed." The trial court denied the request. Thus, our review is strictly limited to whether the evidence supported such an instruction.

> When reviewing the refusal of a trial court to give certain instructions requested by a party to the jury, this Court must decide whether the evidence presented at trial was sufficient to support a reasonable inference by the jury of the elements of the claim. If the instruction is supported by such evidence, the trial court's failure to give the instruction is reversible error.

*Ellison v. Gambill Oil Co.*, 186 N.C. App. 167, 169, 650 S.E.2d 819, 821 (2007) (citations omitted), *aff'd per curiam and disc. review improvidently allowed*, 363 N.C. 364, 677 S.E.2d 452 (2009).

I conclude that defendant's request was supported by the evidence presented at trial. Our Supreme Court has established that

> [o]ne may assert title to land embraced within the bounds of another's deed by showing adverse possession of the portion claimed for twenty years under known and visible lines and boundaries, but his claim is limited to *the area actually possessed*, and the burden is upon the claimant to establish his title to the land in that manner.

*Wallin v. Rice*, 232 N.C. 371, 373, 61 S.E.2d 82, 83 (1950) (citation omitted) (emphasis added).

Here, at trial, defendant offered "Exhibit E," a diagram of the property, into evidence. From this exhibit she testified to her use of the property. She explained that she made the following improvements, all of which were without plaintiffs' permission: 1) a "media dog fence" installed "around 1994" which was visible and marked by flags, 2) a barbed wire fence installed in 1984, which "traces along the property line" 3) two "wrought-iron gates" installed "around the early part" of her possession of the property, which were installed "to protect the drive to the house" 4) a barn, and the foundations for two

other barns, built in the early 90s, 5) a "stone bridge" built in the early 90s, and 6) an arbor built in the late 80s to "park a car, or either, you know, to entertain, if you want" Defendant also testified that when she moved into the cabin on the property, she installed indoor plumbing, heat, water, and electricity, all without plaintiffs' assistance or permission.

I conclude that this evidence is sufficient to allow a reasonable inference by the jury that defendant actually possessed at least some portion of the property, smaller than the entire 23-acre parcel; and further, that those portions actually possessed were marked by visible boundaries. *See Locklear v. Savage*, 159 N.C. 236, 238, 74 S.E. 347, 348 (1912) ("The possession must . . . be shown by known and visible boundaries.").

As such, I conclude that the trial court erred in denying defendant's request for specific instructions regarding portions of the property that were actually possessed. Further, I disagree with the majority that defendant was not prejudiced by this error.

The majority reasons that any error in failing to so instruct the jury was harmless in light of the insufficiency of the evidence as to hostility. Yet, it appears that the majority has ignored the fact that the issue of hostility was decided by the jury in defendant's favor. On the verdict sheet, the jury was asked: "Was this actual possession exclusive and hostile to the Defendants, Grover & Caroleen Minor?" To which the jury answered, "Yes." As such, I believe the majority's lengthy analysis, regarding hostility and labeling defendant's possession permissive, is inappropriate and beyond the scope of our review on appeal.

While I agree with the majority that the evidence presented at trial would tend to suggest that defendant has failed to satisfy the element of hostility, the jury obviously disagreed. "Weighing evidence is not a task assigned to the Court—either trial or appellate." *Southern R. Co. v. Woltz*, 264 N.C. 58, 61, 140 S.E.2d 738, 740 (1965). Determining the weight of the evidence is "a jury function." *Id.* Likewise, on remand for a new trial, a new jury very well might determine, as the majority suggests, that defendant's possession was permissive. But again, I must stress the importance of keeping that determination squarely within the hands of the jury.