MARGARET O. LIBORIO, Administratrix of the Estate of LOWELL THOMAS LIBORIO, Plaintiff v. WILLIAM W. KING, M.D. and WILMINGTON HEALTH ASSOCIATES, P.A., Defendants

No. COA01-32

(Filed 4 June 2002)

1. **Medical Malpractice— informed consent—negligent misrepresentation**

   The trial court did not err in a medical malpractice action that arose from a death following an endoscopic diagnostic procedure (ERCP) by refusing plaintiff's request to instruct the jury that the deceased's consent to the procedure was invalid if it was obtained by negligent misrepresentation of a material fact. N.C.G.S. § 90-21.13(b) provides that the statutory presumption of validity for informed consent may be rebutted by proof of misrepresentation, but the requested charge suggests that misrepresentation renders the consent invalid as a matter of law. Moreover, the legislature intended to refer only to intentional misrepresentation, and a doctor who obtains consent by informing the patient according to his honest diagnosis is still liable for negligence in arriving at the diagnosis or in providing the patient with appropriate information.

2. **Trial— jury request for the "written law"—particular statute not furnished**

   The trial court did not abuse its discretion in a medical malpractice action which involved informed consent by denying plaintiff's request that the jury be provided with a written copy

LIBORIO v. KING

[150 N.C. App. 531 (2002)]

of N.C.G.S. § 90-21.13 when it requested a copy of "the written law." The phrase "the written law" was too general to identify which statute the jury was requesting; when asked for clarification, the jury answered that it would read the charge and inform the judge if they needed more information, but made no more requests.

Appeal by plaintiff from judgment entered 23 May 2000, and from order entered 27 June 2000, by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 18 February 2002.

*Law Offices of Wade E. Byrd, by Wade Byrd and Sally A. Lawing for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, by John D. Martin, for defendant-appellees.*

BIGGS, Judge.

This case arises from a medical malpractice action filed by Margaret Liborio (plaintiff) following the death of her husband, Thomas Liborio (Liborio). Plaintiff appeals from the verdict and judgment entered following jury trial, and from the trial court's denial of her motion for a new trial. For the reasons that follow, we conclude that there was no error in the jury verdict, and affirm the trial court's denial of plaintiff's motion.

On 31 December 1995, Liborio went to the emergency room at Cape Fear Memorial Hospital in Wilmington, North Carolina, complaining of nausea, abdominal pain, and gastric distress. The emergency room physician, Dr. Kastner, examined him and ordered an ultrasound, before contacting Dr. Thompson, the physician on call for Liborio's family physician, Dr. Visser. When Dr. Thompson arrived, he examined Liborio and prescribed medication for pain and nausea. Dr. Kastner's and Dr. Thompson's initial assessment was that Liborio suffered from either gallstones or hepatitis. Because gallstones would require surgery, Dr. Thompson contacted Dr. Miles, the surgeon on duty. Dr. Miles examined Liborio, reviewed the test results, and concluded that Liborio's symptoms might be caused by gallstones. Dr. Miles did not want to perform gall bladder surgery until after Liborio had an endoscopic retrograde cholangiopancreatography (ERCP), a diagnostic surgical procedure. Accordingly, Dr. Thompson called in Dr. King (defendant), who was a gastroenterologist with experience performing ERCPs.

Defendant came to the hospital the next morning and reviewed Liborio's medical charts and test results. Defendant agreed with the preliminary diagnosis of Dr. Kastner, Dr. Thompson, and Dr. Miles, that Liborio likely suffered from gallstones or hepatitis. The test results offering conclusive proof of hepatitis take 96 hours to process, by which time Liborio could be in critical condition if he were suffering from gallstones. Consequently, defendant agreed with the other doctors, that an ERCP was the logical next step in Liborio's treatment, and that it should be performed as soon as possible. Defendant met with plaintiff and Liborio, and discussed the ERCP procedure with them, including a description of possible risks, before obtaining Liborio's signature on an informed consent form. The ERCP was performed that day and revealed that Liborio did not have gallstones, as previously believed. Unfortunately, Liborio developed pancreatitis and other serious complications from the surgery. He did not recover, and died on 1 March 1996.

On 25 February 1998, plaintiff filed suit against defendant, the hospital, and several of the physicians who had treated Liborio. Before trial, plaintiff's claims were resolved with respect to all those named in the suit except the defendants in the present appeal. The case was tried before a jury on 24 April 2000. During the charge conference, plaintiff asked the trial court to instruct the jury that informed consent is invalid if obtained by misrepresentation of a material fact; the trial court denied this request. During its deliberations, the jury asked for a copy of the court's charge, and also requested a copy of "the written law." The court provided a copy of its instructions to the jury and then asked for clarification on the meaning of "the written law." The jury indicated that it would review the charge and would inform the court if they needed more information; however, the jury made no further requests for written documents. At this point, plaintiff renewed her request that the jury be instructed on the effect of misrepresentation on informed consent, or that the jury be given a copy of the relevant statute; the request was denied.

On 11 May 2000, the jury returned a verdict finding defendants not liable for damages. The trial court entered judgment for defendants on 23 May 2000. On 1 June 2000, plaintiff filed a motion for a new trial, pursuant to N.C.G.S. § 1A-1, Rule 59. Her motion was denied on 26 June 2000. Plaintiff appeals from the verdict and judgment at trial, and from the order denying her motion for a new trial.

As a preliminary matter, we note that plaintiff set out eleven assignments of error in the Record, but argues only two of these in her brief. The assignments of error not argued or supported by legal authority in defendant's brief are deemed abandoned. N.C.R. App. P. 28(b)(5) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.")

I.

[1] Plaintiff argues first that the trial court erred in refusing plaintiff's request to instruct the jury that Liborio's consent to the ERCP was invalid if obtained by misrepresentation of a material fact.

To prevail on this issue, the plaintiff must demonstrate that (1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury. *Faeber v. E. C. T. Corp.*, 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972) (upholding instruction on grounds that it "sufficiently covered the meaning of the terms" that defendant requested the trial court to define in its charge to jury).

When a request is made for a specific jury instruction that is correct as a matter of law and is supported by the evidence, the trial court is required to give an instruction expressing "at least the substance of the requested instruction." *Parker v. Barefoot*, 130 N.C. App. 18, 20, 502 S.E.2d 42, 44 (1998), *rev'd on other grounds*, 351 N.C. 40, 519 S.E.2d 315 (1999) (citations omitted). On appeal, this Court "must consider and review the challenged instructions in their entirety; it cannot dissect and examine them in fragments," in order to determine if the court's instruction provided "the substance of the instruction requested[.]" *Id.*

N.C.G.S. § 90-21.13 (2001), which governs informed consent to medical treatment, provides in relevant part that:

(b) A consent which is evidenced in writing and which meets the foregoing standards, and which is signed by the patient or other authorized person, shall be presumed to be a valid consent. This presumption, however, may be subject to rebuttal only upon proof that such consent was obtained by fraud, deception or misrepresentation of a material fact.

N.C.G.S. § 90-21.13(b) (2001). Plaintiff acknowledges that defendant did not obtain consent to the ERCP through fraud or deception; however, she contends that Liborio's consent was obtained through the negligent misrepresentation of a material fact. She argues that in the context of G.S. § 90-21.13(b) the word 'misrepresentation' may include innocent or negligent misrepresentation. On this basis, plaintiff argues that the trial court was required to specifically instruct the jury that consent obtained by misrepresentation, as in this case negligent misrepresentation, is invalid. The specific instruction requested reads in pertinent part:

> However, under North Carolina law, the otherwise valid consent of a patient to a procedure *is not valid* when the consent is obtained by the misrepresentation of a material fact. The plaintiff contends that the defendant was negligent in that no valid consent was obtained by the defendant, Dr. King, to the performance of the ERCP procedure because Dr. King misrepresented certain material facts to Lowell Thomas Liborio and obtained his consent through said misrepresentation. The plaintiff contends that Dr. King stated to Lowell Thomas Liborio that his gallbladder was "packed full of stones" and that this was not true and that this was a misrepresentation of a material fact. (emphasis added)

We believe plaintiff's requested instruction is an incorrect statement of the law and that the trial court did not err in declining to give it. First, the plain language of G.S. § 90-21.13(b) provides that the presumption of validity "may be subject to rebuttal only upon proof that such consent was obtained by fraud, deception or misrepresentation of a material fact." This language does not support plaintiff's requested instruction that "under North Carolina law, the otherwise valid consent of a patient to a procedure is not valid when the consent is obtained by the misrepresentation of a material fact." The statute provides that informed consent may be rebutted by proof of misrepresentation; however, the requested charge suggests that misrepresentation renders a patient's consent invalid as a matter of law.

In addition, we reject plaintiff's argument that the word misrepresentation, as it appears in N.C.G.S. § 90-21.13(b), includes negligent misrepresentation. Defendant urges this Court to apply the rule of statutory construction *ejusdem generis* to discern whether the legislature intended the term 'misrepresentation' in G.S. § 90-21.13(b) to encompass negligent misrepresentation. We agree that such analysis is appropriate here. Where a statute is unclear in its meaning, the

Court may resort to judicial construction to determine the legislative intent. *In re Banks*, 295 N.C. 236, 244 S.E.2d 386 (1978).

"Under the principle of *ejusdem generis*, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk and Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129, 113 L. Ed. 2d 95, 107 (1991). *Ejusdem generis* has been further explained as follows:

> Where words of general enumeration follow those of specific classification, the general words will be interpreted to fall within the same category as those previously designated. The maxim *ejusdem generis* applies especially to the construction of legislative enactments. It is founded upon the obvious reason that if the legislative body had intended the general words to be used in their unrestricted sense the specific words would have been omitted.

*Meyer v. Walls*, 347 N.C. 97, 106, 489 S.E.2d 880, 885 (1997) (where statute lists state level agencies, followed by phrase "all other departments, institutions, and agencies[,]" *ejusdem generis* excludes application of statute to county level board or agency). *See also State v. Gamble*, 56 N.C. App. 55, 57, 286 S.E.2d 804, 805 (1982) (criminal statute defining "building" as "dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and 'any other structure' . . . " excludes "fenced in area" from "any other structure" under principle of *ejusdem generis*); *Adler v. Trust Co.*, 4 N.C. App. 600, 605, 167 S.E.2d 441, 444 (1969) ("personal effects" do not include houseboat; Court holds that houseboat "not *ejusdem generis* with articles of jewelry, clothing, household furniture, china, silver or crystal" listed before "personal effects" in will).

Standing alone, the term 'misrepresentation' appears broad enough to encompass negligent misrepresentation; however, as the last in the series "fraud, deception or misrepresentation," the principle of *ejusdem generis* indicates that only knowing and intentional behavior is intended. Having found no North Carolina case law that specifically addresses this point, we find the Maryland case cited by defendant, though not authoritative, to be persuasive. In *Luskin's v. Consumer Protection*, 353 Md. 335, 726 A.2d 702 (1999), the Maryland Court of Special Appeals construed a statute prohibiting "[d]ecep-

tion, fraud, false pretense, false premise, [and] misrepresentation," and held:

> Although the word "misrepresentation," unqualified, may mean either an intentional or an innocent misrepresentation, "misrepresentation" as found in § 13-301(9) is included in an enumeration of proscribed commissions, each of which connotes intentional misrepresentation. Consequently, under the rule of *ejusdem generis*, "misrepresentation" in § 13-301(9) should be given the same meaning as the accompanying terms.

353 Md. at 366-67, 726 A.2d at 717.

We conclude that the legislature, in enacting G.S. § 90-21.13(b), intended the word 'misrepresentation' to refer only to intentional misrepresentation, and not to encompass innocent or negligent misrepresentation. Accordingly, the trial court did not err in rejecting plaintiff's requested instruction.

Moreover, we do not agree with plaintiff's contention that this construction of the statute will bar recovery in any but the most "bizarre" circumstance of a physician intentionally concealing information from his patient. A doctor who obtains a patient's consent for treatment by informing the patient according to his honest diagnosis is still liable for negligence in arriving at the diagnosis, or in providing the patient with appropriate information. The instructions given by the trial court in the case *sub judice* addressed this possibility, and directed the jury to consider the following allegations of negligence in regards to informed consent: (1) that defendant failed to tell Liborio about alternatives to ERCP; (2) that defendant inappropriately minimized the dangers of the ERCP; and (3) that defendant failed to provide information to the patient sufficient to give him a general understanding of the risks and hazards inherent in an ERCP.

We conclude that the trial court's charge sufficiently instructed the jury on negligence as it pertains to informed consent. We note that defendant has also argued that this Court is required by the holdings of *Hunt v. Bradshaw*, 242 N.C. 517, 88 S.E.2d 762 (1955), and *Butler v. Berkeley*, 25 N.C. App. 325, 213 S.E.2d 571 (1975), to rule in his favor on this issue. However, we conclude that neither case is directly on point. Our decision, therefore, does not rest upon these cases.

**LIBORIO v. KING**

[150 N.C. App. 531 (2002)]

For the reasons discussed above, we hold that the plaintiff has failed to show that the requested instruction was a correct statement of law; accordingly, this assignment of error is overruled.

## II.

**[2]** Plaintiff next argues that the trial court committed reversible error by denying plaintiff's request that, upon the jury's request for a copy of "the written law," they be provided with a written copy of G.S. § 90-21.13. We disagree.

The phrase "the written law" is too general to identify which statute the jury was requesting. Consequently, the trial court asked the jury to clarify what it meant by the request. The jury answered that it would read the charge, and would inform the judge if they needed more information. We conclude that this procedure was an appropriate response to the jury's question. Plaintiff has produced no evidence to show that the jury was specifically requesting a copy of G.S. § 90-21.13, and we discern none. Moreover, even if the jury's question were construed as a request for the statute, the decision of whether to provide a written copy rests in the trial court's discretion. *See State v. Moore*, 339 N.C. 456, 451 S.E.2d 232 (1994) (trial court has authority to provide the jury with written instructions upon request). We perceive no abuse of discretion in the present case. This assignment of error is overruled.

For the reasons discussed above, we conclude that the trial court did not err in its jury instructions, nor in its response to the jury's broad request for "the written law." Accordingly, we conclude that there was no error in the verdict and judgment and affirm the trial court's denial of plaintiff's motion for a new trial.

No Error.

Chief Judge EAGLES and Judge McCULLOUGH concur.