IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-295
 No. COA20-497

 Filed 6 July 2021

 Mecklenburg County, No. 19-CVS-3344

 CHRISTOPHER BARROW, Plaintiff,

 v.

 DAVID SARGENT, Defendant.

 Appeal by Plaintiff from judgment entered 2 March 2020 by Judge Martin B.

 McGee in Mecklenburg County Superior Court. Heard in the Court of Appeals

 28 April 2021.

 Johnson & Groninger, PLLC, by Ann Groninger and Helen S. Baddour, for
 Plaintiff-Appellant.

 Robinson Elliot & Smith, by William C. Robinson and Dorothy M. Gooding, for
 Defendant-Appellee.

 COLLINS, Judge.

¶1 Plaintiff Christopher Barrow appeals from a judgment entered upon a jury’s

 verdict finding that Plaintiff was not injured by the negligence of Defendant. Plaintiff

 argues that the trial court erred by declining to give either of two alternative proposed

 jury instructions and by requiring Plaintiff to introduce additional portions of

 Defendant’s deposition at trial for completeness under N.C. Gen. Stat. § 1A-1,

 Rule 32(a)(5). The trial court did not err in declining Plaintiff’s first proposed special
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 instruction because it was not a correct statement of law, and did not err in declining

 his alternative proposed instruction because it was not supported by the evidence.

 The trial court did not abuse its discretion in requiring the reading of the portions of

 Defendant’s deposition requested by Defendant.

 I. Procedural History and Factual Background

¶2 This case arises from a collision between a car driven by Defendant and a

 bicycle ridden by Plaintiff in the crosswalk across Meta Road adjacent to the

 intersection of Meta Road and Jetton Road in Cornelius. The particular facts relevant

 to the issues on appeal are as follows: A sidewalk runs alongside Jetton Road and

 crosses Meta Road in a marked crosswalk (the “crosswalk”). Drivers traveling toward

 Jetton Road on Meta Road approaching the intersection are presented with a stop

 sign before the crosswalk.

¶3 On 22 December 2016, Plaintiff was bicycling with a friend on the sidewalk

 along Jetton Road. At around 4 p.m., Defendant was driving on Meta Road towards

 the intersection, planning to make a right turn onto Jetton Road. In his deposition,

 Defendant testified that as he “approached the intersection, [he] saw that there was

 no one, no pedestrians that [he] could see in [his] clear view” and he shifted his

 attention left to look for oncoming traffic. Similarly, Defendant told a responding

 officer that while he was pulling up to the stop sign, he looked in both directions

 “while he was also braking into it and didn’t see anything” and “then at some point,
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 he was looking left with the traffic.” Defendant testified that he came to a complete

 stop at the stop sign. Plaintiff testified that it “looked like [Defendant] was coming

 to a stop” but could not “say if he did a rolling stop or a full stop.”

¶4 Plaintiff approached the crosswalk on the sidewalk from Defendant’s right.

 Plaintiff entered the crosswalk, and the front bumper of Defendant’s car collided with

 Plaintiff and his bicycle in the crosswalk. Plaintiff went to urgent care and was

 treated for injuries.

¶5 Plaintiff filed this negligence action against Defendant and Janet Sargent on

 19 February 2019. Before trial, Plaintiff voluntarily dismissed certain claims and

 dismissed Janet Sargent as a party. At trial, Plaintiff read various portions of

 Defendant’s deposition to the jury. Over Plaintiff’s objection, the trial court required

 Plaintiff to read additional portions of the deposition to the jury for completeness

 under N.C. Gen. Stat. § 1A-1, Rule 32(a)(5).

¶6 At the charge conference, Plaintiff requested the trial court give either a

 special instruction explaining a “[m]otorists[’] duty toward a lawful crosswalk user”

 or an instruction stating the definition of a highway and that “a sidewalk is a part of

 the highway.” The trial court declined to give either instruction. Following the jury

 instructions given, Plaintiff renewed his request for an instruction on the definition

 of a highway, which the trial court again rejected.

¶7 After deliberations, the jury returned a verdict that Plaintiff was not injured
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 by the negligence of Defendant. The trial court entered judgment upon the jury’s

 verdict, and Plaintiff gave timely notice of appeal.

 II. Discussion

 A. Plaintiff’s Proposed Jury Instructions

¶8 Plaintiff argues that the trial court erred by declining to give either of his

 proposed jury instructions.

 To prevail on this issue, [P]laintiff must demonstrate that
 (1) the requested instruction was a correct statement of law
 and (2) was supported by the evidence, and that (3) the
 instruction given, considered in its entirety, failed to
 encompass the substance of the law requested and (4) such
 failure likely misled the jury.

 Liborio v. King, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002). To be supported

 by the evidence, a proposed instruction “must be based on evidence, which when

 viewed in the light most favorable to the proponent, will support a reasonable

 inference of each essential element of the claim or defense asserted.” Anderson v.

 Austin, 115 N.C. App. 134, 136, 443 S.E.2d 737, 739 (1994).

¶9 Plaintiff first argues that the trial court erred by failing to instruct the jury

 according to his first proposed special instruction that “[w]hen a lawful crosswalk

 user is crossing a roadway within a marked crosswalk, the operator of any vehicle

 must yield the right of way to the lawful crosswalk user.” Plaintiff contends that,

 under North Carolina law, “a motorist has a duty to yield to a person in [the]
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 crosswalk, regardless of whether the person is on foot, riding a bicycle, scooter or

 skate board, or is in a wheelchair, as long as the person is lawfully (ie. not prohibited

 from) using the crosswalk.”

¶ 10 Whether Plaintiff’s first proposed special instruction accurately states the law

 is a question of statutory interpretation reviewed de novo on appeal. See Swauger v.

 Univ. of N.C. at Charlotte, 259 N.C. App. 727, 728, 817 S.E.2d 434, 435 (2018) (“Issues

 of statutory interpretation are also subject to de novo review.”). “The primary

 objective of statutory interpretation is to ascertain and effectuate the intent of the

 legislature.” Lunsford v. Mills, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (citation

 omitted). “If the language of the statute is clear and is not ambiguous, we must

 conclude that the legislature intended the statute to be implemented according to the

 plain meaning of its terms.” Id. (citation omitted).

¶ 11 The language of the statutory provisions governing this question is not

 ambiguous, and the plain meaning of those provisions does not support Plaintiff’s

 first proposed special instruction. N.C. Gen. Stat. § 20-155 provides, in pertinent

 part:

 The driver of any vehicle upon a highway within a business
 or residence district shall yield the right-of-way to a
 pedestrian crossing such highway within any clearly
 marked crosswalk . . . except at intersections where the
 movement of traffic is being regulated by traffic officers or
 traffic direction devices.
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 N.C. Gen. Stat. § 20-155(c) (2016) (emphasis added). N.C. Gen. Stat. § 20-173

 provides, in pertinent part:

 Where traffic-control signals are not in place or in
 operation the driver of a vehicle shall yield the right-of-
 way, slowing down or stopping if need be to so yield, to a
 pedestrian crossing the roadway within any marked
 crosswalk or within any unmarked crosswalk at or near an
 intersection, except as otherwise provided . . . .

 N.C. Gen. Stat. § 20-173(a) (2016) (emphasis added).

¶ 12 These provisions, which Plaintiff cites in support of his first proposed special

 instruction, are by their terms limited to “pedestrians.” The term pedestrian is not

 specifically defined in the relevant statutes. Absent a specific “contextual definition,

 courts may look to dictionaries to determine the ordinary meaning of words within a

 statute.” Dickson v. Rucho, 366 N.C. 332, 342, 737 S.E.2d 362, 370 (2013) (quoting

 Perkins v. Ark. Trucking Servs., 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000)). The

 ordinary meaning of pedestrian has long been understood to be a person traveling on

 foot, not a person bicycling. See Pedestrian, Webster’s Third New International

 Dictionary (1971) (defining a pedestrian as “a person who travels on foot,” or “one

 walking as distinguished from one traveling by car or cycle”). Indeed, our courts have

 consistently employed this definition of the term pedestrian. See, e.g., Barnes v.

 Horney, 247 N.C. 495, 498, 101 S.E.2d 315, 317 (1958) (“[A] pedestrian is a foot

 traveler . . . .”); Lewis v. Watson, 229 N.C. 20, 26, 47 S.E.2d 484, 488 (1948) (“[A]
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 person walking along a public highway pushing a handcart is a pedestrian . . . .”);

 Holmes v. Blue Bird Cab, Inc., 227 N.C. 581, 584, 43 S.E.2d 71, 73 (1947) (holding

 that a person pushing a bicycle on foot was a pedestrian).

¶ 13 Other related provisions distinguish between pedestrians and bicyclists,

 confirming that the legislature intended to employ the ordinary meaning of the term

 pedestrian and did not intend to include bicyclists within the definition of pedestrian

 in sections 20-155(c) and 20-173(a). See N.C. Gen. Stat. §§ 20-171.8(2) (2016)

 (defining an “operator” of a bicycle as “a person who travels on a bicycle”); 20-171.8(6)

 (defining a “public bicycle path” as certain rights-of-way “for use primarily by bicycles

 and pedestrians”); 20-173(c) (requiring the driver of a vehicle to yield the right-of-way

 to “any pedestrian, or person riding a bicycle,” in certain circumstances); 20-175.6(c)

 (2016) (requiring a “person operating an electric personal assistive mobility device on

 a sidewalk, roadway, or bicycle path” to “yield the right-of-way to pedestrians and

 other human-powered devices”). Likewise, provisions governing pedestrians

 recognize that pedestrians “walk.” See N.C. Gen. Stat. §§ 20-172(b) (2016)

 (Pedestrian-control signals shall indicate either “WALK” or “DON’T WALK”);

 20-174(d) (2016) (“Where sidewalks are provided, it shall be unlawful for any

 pedestrian to walk along and upon an adjacent roadway. Where sidewalks are not

 provided, any pedestrian walking along and upon a highway shall, when practicable,

 walk only on the extreme left of the roadway or its shoulder facing traffic which may
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 approach from the opposite direction.”).

¶ 14 Additionally, bicycles are explicitly classified as “vehicles,” not “pedestrians.”

 N.C. Gen. Stat. § 20-4.01 defines a “vehicle” as follows:

 Every device in, upon, or by which any person or property
 is or may be transported or drawn upon a highway,
 excepting devices moved by human power or used
 exclusively upon fixed rails or tracks; provided, that for the
 purposes of this Chapter bicycles and electric assisted
 bicycles shall be deemed vehicles and every rider of a bicycle
 or an electric assisted bicycle upon a highway shall be
 subject to the provisions of this Chapter applicable to the
 driver of a vehicle except those which by their nature can
 have no application.

 N.C. Gen. Stat. § 20-4.01(49) (2016) (emphasis added).

¶ 15 Because Plaintiff’s first proposed special instruction was not a correct

 statement of law, the trial court did not err in declining to give the instruction to the

 jury. See Liborio, 150 N.C. App. at 534, 564 S.E.2d at 274.

¶ 16 This is not to say that bicyclists are wholly unprotected in crosswalks. “The

 law imposes upon every person who enters upon an active course of conduct the

 positive duty to use ordinary care to protect others from harm and a violation of that

 duty is negligence.” Toone v. Adams, 262 N.C. 403, 409, 137 S.E.2d 132, 136 (1964).

 Additionally, the law imposes a number of specific duties on drivers. Drivers must

 stop at stop signs. See N.C. Gen. Stat. § 20-158(b)(1) (2021) (“When a stop sign has

 been erected or installed at an intersection, it shall be unlawful for the driver of any
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 vehicle to fail to stop in obedience thereto . . . .”). Drivers must also “keep a reasonable

 and proper lookout in the operation of [their] motor vehicle[s;]” have “a duty not only

 to look, but to see what is there to be seen[;]” and “must keep such an outlook in the

 direction of travel as a reasonably prudent person would keep under the same or

 similar circumstances.” Sink v. Sumrell, 41 N.C. App. 242, 246, 254 S.E.2d 665,

 668-69 (1979); see also N.C.P.I.—MV 201.20 (2020) (same). Additionally, a driver

 “upon a highway or public vehicular area before starting, stopping or turning from a

 direct line shall first see that such movement can be made in safety . . . .” N.C. Gen.

 Stat. § 20-154(a) (2021). In this case, the trial court instructed the jury on each of

 these duties.

¶ 17 Plaintiff presents several policy arguments that the specific protections our

 statutes afford to pedestrians using crosswalks should extend to bicyclists. “It is our

 duty to interpret and apply the law as it is written, but it is the function and

 prerogative of the Legislature to make the law.” State v. Scoggin, 236 N.C. 19, 23, 72

 S.E.2d 54, 57 (1952). Accordingly, we do not address the merits of Plaintiff’s policy

 arguments, which are more appropriately directed to our legislature.

¶ 18 Plaintiff next argues that the trial court erred by declining his alternative

 proposed instruction that the definition of “highway” is “[t]he entire width between

 property or right-of-way lines of every way or place of whatever nature, when any

 part thereof is open to the use of the public as a matter of right for the purposes of
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 vehicular traffic” and that “[a] sidewalk is a part of the highway.”

¶ 19 A “highway” is defined as

 [t]he entire width between property or right-of-way lines of
 every way or place of whatever nature, when any part
 thereof is open to the use of the public as a matter of right
 for the purposes of vehicular traffic. The terms “highway”
 and “street” and their cognates are synonymous.

 N.C. Gen. Stat. § 20-4.01(13) (2016). A sidewalk is not categorically part of the

 highway; but a sidewalk that falls within the boundaries of the property or right-of-

 way lines described in section 20-4.01(13) would be a part of the highway. Our

 Supreme Court has held that the portion of sidewalk which drivers cross to access a

 parking lot open to public vehicular traffic is considered a part of the “highway” under

 the definition now codified in section 20-4.01(13). See State v. Perry, 230 N.C. 361,

 363, 53 S.E.2d 288, 289 (1949).

¶ 20 In the present case, Plaintiff has failed to present “evidence, which when

 viewed in the light most favorable to [Plaintiff], will support a reasonable inference”

 that the particular sidewalk along Jetton Road upon which he was riding his bicycle

 was a part of the highway. See Anderson, 115 N.C. App. at 136, 443 S.E.2d at 739.

 There is no evidence in the record that the sidewalk at issue was “between property

 or right-of-way lines of” the property upon which Jetton Road was located. See N.C.

 Gen. Stat. § 20-4.01(13). Nor was there evidence that the sidewalk at issue was

 crossed by drivers to access a parking lot open to the public for vehicular traffic. See
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 Perry, 230 N.C. at 363, 53 S.E.2d at 289. While the evidence shows that the crosswalk

 is within the “roadway” of Meta Road and is therefore a part of the “highway,” see

 N.C. Gen. Stat. § 20-4.01(38) (defining “roadway” as the “portion of a highway

 improved, designed, or ordinarily used for vehicular travel . . . .”), Plaintiff requested

 that the jury be instructed more broadly that “a sidewalk is a part of the highway.”

 Plaintiff has therefore failed to demonstrate that his alternative proposed instruction

 “was supported by the evidence,” see Liborio, 150 N.C. App. 534, 564 S.E.2d 274, and

 the trial court did not err by declining to give the instruction.

 B. Admission of Supplemental Deposition Excerpts

¶ 21 Plaintiff next argues that the trial court erred by requiring the reading of

 additional portions of Defendant’s deposition at trial to supplement the portions of

 the deposition introduced by Plaintiff.

¶ 22 At trial, “any part or all of a deposition, so far as admissible under the rules of

 evidence applied as though the witness were then present and testifying, may be used

 against any party who was present or represented at the taking of the

 deposition . . . .” N.C. Gen. Stat. § 1A-1, Rule 32(a) (2016). “North Carolina law

 provides that a trial court may require a party to read a complete statement or other

 relevant portions of evidence in order to provide context for the jury; however, this

 decision is within the trial court’s discretion at trial.” Gray v. Allen, 197 N.C. App.

 349, 358, 677 S.E.2d 862, 868 (2009) (citing N.C. Gen. Stat. § 1A-1, Rule 32(a)(5)).
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 “[W]here matters are left to the discretion of the trial court, appellate review is

 limited to a determination of whether there was a clear abuse of discretion.” White

 v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). “A ruling committed to a

 trial court’s discretion is to be accorded great deference and will be upset only upon a

 showing that it was so arbitrary that it could not have been the result of a reasoned

 decision.” Id.

¶ 23 Plaintiff read the following portions of Defendant’s deposition at trial, and the

 trial court required the italicized portions to be read for completeness.

 Q. Now, as of December . . . 2016, how long had you lived
 in that neighborhood?

 A. I had lived there my whole life, so since 1994.

 Q. Okay. Would you say that you came in and out of the
 neighborhood at least once a day, sometimes more than
 once a day while you were living there?

 A. Yes. I wasn’t driving until I was 16, obviously.

 Q. Okay.

 A. But yes, at least once a day. If I left the house, more
 than likely I was going to . . . [g]o through that intersection.

 Q. Okay. How would you describe your neighborhood? Is
 it a family neighborhood? Do you see a lot of kids and
 activity in the neighborhood?

 A. Yes. It’s a pretty active neighborhood.

 Q. Okay. All residential area?

 A. Yes. Yeah. There’s no, like, shopping centers or retail
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

or anything . . . like that. Just residential and a golf club?

Q. Okay. Did you get your driver’s license when you were
16?

A. I did.

Q. How old were you at the time that this happened?

....

A. 22.

....

Q. You said it’s a pretty active neighborhood. What was
your experience of seeing people on the sidewalks walking,
riding bikes, jogging, what have you?

A. Generally, I remember people doing all of those things,
nothing specifically.

Q. Right. Just a general memory of seeing a lot of activity?

A. Yes.

....

Q. Let’s turn to the December 22 collision. All right. In your
own words tell me what happened?

A. As we said, I was driving my car to play golf. I left my
house and . . . went up Meta Road, and approached the
intersection of Meta Road and Jetton to make a right to go
towards the golf course. As I approached the intersection, I
saw that there was no one, no pedestrians that I could see
in my clear view. I shifted my attention left to look for
oncoming traffic, and I - - I don’t remember specifically how
many cars, but I - - I do seem to remember waiting for traffic
to go by. And then, as I saw that the traffic from the left
was clear, I turned my attention to look where I was going,
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

let off the brakes to start moving, and right as I shifted my
attention to the right, I saw [Plaintiff] in front of me on the
bicycle. I saw him before I made contact, but given the, the
shock and reaction time of it, I did bump into him. We - -
there was a period of time before I was able to, like, fully
stop the car that he was kind of pinned up against the front
of my car. And then, once I was able to stop, he fell away
from the car. Once I - - once that happened, I got up the car,
got out and checked out [Plaintiff] and how he was doing
and made sure we got him out of the road.

....

Q. You weren’t rushing your speed or anything?

....

A. No.

Q. And did you come to a complete stop at the stop sign? It
sounds like you did.

A. I did, because I do distinctly remember stopping and
looking because I had to definitely make sure the traffic
wasn’t coming left. And there was - - I don’t remember
exactly how many cars, but there - - I do distinctly remember
having to wait for traffic coming from this part of Jetton
Road.

Q. From your left as you are facing . . . Jetton Road from
Meta?

A. Correct.

Q. Okay. And I know you said you don’t remember how
many cars, but it didn’t seem like it was, you know, more
than one, maybe a couple of cars or - -

A. I - - I can’t remember exactly. It was - - it was at least
one. . . . I don’t remember how many it was.
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

Q. But that there was traffic.

....

A. But that there was traffic.

Q. Okay. And in general, what was the traffic like that day?
And were cars coming from the other direction?

A. There - - there were some cars coming from the other
direction. It definitely wasn’t empty streets. I would say
pretty steady, normal traffic for this residential area.

....

Q. As you are driving along Meta and you are approaching
the stop sign at Jetton, are there any obstructions and signs
in the way of you being able to see the sidewalk on either
side of the road?

A. There are. So . . . as I was [] approaching that
intersection on the near right corner, there is kind of an
elevated - - not a hill, but . . . an elevated grounds area
where they have just plants and shrubbery on it, so it’s a - -
can be a bit tough to see a pedestrian[] coming from that
way. There is a . . . kind of a middle median just at the
intersection of Meta here, kind of a little spot in the middle
between the incoming people of Meta and outcoming people
of Meta that you kind of have to pull out in front of a bit to
be able to see cars coming from the left. . . . And just
generally, it’s a downhill area of the road coming from this
side . . . this side over here kind of comes over a rise and
then starts to go downhill pretty much everywhere, I would
say. . . . Generally, around this intersection, it’s downhill
going this way on Jetton.

Q. . . . [T]ell me if I’m understanding it correctly. As you’re
approaching the stop sign on Meta and you’re looking to the
right, you have a little bit of a limited sight distance because
Jetton Road itself is a downhill road, so you can only see for
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

some distance to the right; is that correct?

A. Correct.

Q. And is it the same as true for the left, or was there more
visibility there?

A. The left is a little bit, definitely more visibility, I would
say, because also the road kind of starts to go move the right
here. If you were going out towards Cornelius or Jetton, the
road kind of starts moving to the right, so you actually can
then maybe see a little bit more than you can normally.

Q. Okay. How far back . . . can you start seeing out onto the
road? . . . As you are approaching the stop sign, you’re
probably already kind of looking at traffic on Jetton; is that
right?

A. Once I get to the stop, to the intersection, yes.

....

Q. Okay. . . .

A. Because you can’t see it initially very much because of
that kind of middle tree, shrubbery area.

Q. I see. Okay. So you actually have to be at the stop sign
to really get - -

A. You do.

Q. - - the view that you need in order to safely pull out.

A. You do for both directions.

Q. Okay. So do you know how long in seconds or minutes
. . . you were at the stop sign before you started to pull out?

A. I don’t remember the exact amount of time it was. I had
stopped and was looking at traffic to the left. It was - - it
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

was multiple seconds, I would say. I don’t remember exactly
details beyond that, but it was, you know, certainly more
than a second that I was stopped there.

Q. Okay. All right. And as you are approaching the stop
sign, before you got to the stop sign, is it true that you did
not see [Plaintiff] or anyone on a bicycle?

A. I did not see anyone, at least at the corner, and really, the
corner is kind of the only place that I can really see as I was
approaching. . . . [t]he intersection, because of that kind of
raised hill, plants that are on this near corner of Meta and
Jetton.

Q. Okay. If I understand what you told me earlier correctly
you actually did not see him until you started to go out from
the stop sign that way?

A. Yeah. I - - I would say I saw that the coast was going to
be clear on the left. I started to look to the right. As I lift
my foot off the brake, so my car started moving slowly, and
then as I then panned right, that’s when I saw [Plaintiff].

Q. Okay. Before you pulled out from the stop sign, before
you took your foot off the gas and started to move forward,
did you look right at any time?

A. I don’t think I did. I would say it happened as I was just
letting my foot off the brake to start moving. As I - - as
when I started to look to the right.

Q. Okay. And how fast did you have to pull out? I mean,
was there other traffic coming from the left? I mean, can
you describe how fast you pulled out?

A. I definitely wasn’t trying to hit a gap. It wasn’t like I
needed to pull out quickly. I - - from what I remember, it
was totally clear from the left, so I had as much time as I
wanted to, to turn right, in terms of the traffic coming from
the left. And so it was, you know, letting my foot off the
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 brake. And I would say, yeah, it was just kind of that idling
 speed that I was starting to move at.

 Q. Okay. And what part of your car was impacted in the
 collision?

 A. Just the front. . . . It is just basically right on the front
 of my car, the front bumper, the front area of my car.

 [Defendant marks the front bumper of the car on the
 exhibit]

 Q. Okay. So there are some marks - -

 A. Some lower, lower front, lower front part of my car.

 Q. Okay. And there - - so there’s some scratches that were
 left on the car, and those are from that impact?

 A. Yes.

 ....

 Q. Do you know how much time went by from the time you
 pulled out from the stop sign until the impact?

 A. I don’t. . . . And I don’t have an exact, exact amount of
 time. It was - - it was a relatively short time because it was
 basically I took my foot off the brake as I was looking to the
 right, and then he was there. And that’s basically when the
 impact happened.

¶ 24 The trial court reasoned that Defendants’ requested portions were relevant to

 those introduced by Plaintiff because they further explained (1) Defendant’s

 familiarity with the neighborhood, (2) what Defendant did at the time of the collision,

 and (3) what Defendant saw and what conditions were like at the time of the collision.

 We cannot say that the trial court’s decision on these grounds was “so arbitrary that
 BARROW V. SARGENT

 2021-NCCOA-295

 Opinion of the Court

 it could not have been the result of a reasoned decision.” See White, 312 N.C. at 777,

 324 S.E.2d at 833. Accordingly, the trial court did not abuse its discretion by

 requiring the reading of the portions of Defendants’ deposition requested by

 Defendant.

 III. Conclusion

¶ 25 The trial court did not err in refusing Plaintiff’s first proposed special jury

 instruction concerning “lawful crosswalk users” because it was not a correct

 statement of law. The trial court did not err in refusing Plaintiff’s alternative

 proposed instruction on the definition of the highway and of a sidewalk being a part

 of the highway because it was unsupported by the evidence. The trial court did not

 abuse its discretion in requiring Plaintiff to supplement the portions of Defendants’

 deposition read at trial with additional portions requested by Defendant.

 AFFIRMED.

 Judges DIETZ and JACKSON concur.